TODD BLANCHE
Attorney General
BILAL A. ESSAYLI
First Assistant United States Attorney
JENNIFER L. WAIER
Chief Assistant United States Attorney
NEIL P. THAKOR (Cal. Bar No. 308743)
Assistant United States Attorney
Public Corruption & Civil Rights Section
1200 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-6595
E-mail: neil.thakor@usdoj.gov

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JORGE VASQUEZ,<br><br>Defendant. | No. 2:25-CR-00971-JFW-1<br><br><u>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT JORGE VASQUEZ</u><br><br>Hearing Date: August 31, 2026<br>Location: Courtroom of the Hon. John F. Walter |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Neil P. Thakor, hereby submits its sentencing position regarding defendant Jorge Vasquez.

//

//

//

The government's sentencing position is based upon the attached memorandum of points and authorities, the Presentence Investigation Report (Dkt. 29.), the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 18, 2026

Respectfully submitted,

TODD BLANCHE
Attorney General

BILAL A. ESSAYLI
First Assistant United States Attorney

/s/
NEIL P. THAKOR
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant Jorge Vasquez ("defendant") has pled guilty pursuant to count one of the indictment, which charges him with conspiracy to commit mail fraud, in violation of 18 U.S.C. § 371. Specifically, defendant and his co-conspirators operated two companies that hired foreign H-2A farm workers. In the mailed application for the H-2A visas, defendant and his co-conspirators represented to the government that they would not charge the workers visa fees, living expenses, and would pay the workers a certain rate of pay. These representations were false because defendant and his co-conspirators did in fact charge H-2A fees (among other fees) to some workers and paid the workers approximately $3 per hour less than the rate of pay represented to the government.

The United States Probation and Pretrial Services Office ("USPO") calculated defendant's total offense level to be 12 and his criminal history category to be II. (Dkt. 29 (Presentence Investigation Report ("PSR")) p. 3.) The government largely concurs with the USPO's Guidelines calculations, except the government also recommends an additional two-level variance as contemplated in the Plea Agreement. With this additional two-level variance, defendant's total offense level should be 10 and his Guidelines range would be 8 to 14 months' imprisonment.

For the reasons stated below, the government recommends a sentence of 11 months' imprisonment (the mid-point of the adjusted Guidelines range), a supervised release term of three years, a $100 special assessment, and no fine. In addition, to the extent the parties cannot come to a stipulation on restitution prior the

sentencing hearing, the government seeks a future hearing on restitution for the victims.

**II. STATEMENT OF FACTS**

Starting on a date unknown and until at least November 2025, defendant and his co-conspirators recruited foreign workers to work for Cuyama Valley Farms, LLC and JJB Farm, LLC. These companies were owned by one of his co-conspirator, but defendant exercised control over recruitment of workers. Defendant recruited the foreign workers to work on H-2A visas, a specific type of visa that allows employers in the United States to hire foreign workers for temporary or seasonal agricultural work. (PSR, ¶ 12-14.)

Defendant and co-conspirators then mailed applications for the H-2A visas to United States Citizenship and Immigration Services ("USCIS"). As part of the applications, defendant and his co-conspirators would falsely represent, among other things, that they did not seek or receive, or would not seek or receive, payments from prospective H-2A workers for visa fees or living expenses. (PSR, ¶ 14.) In addition, they would also represent that the H-2A workers would be paid a certain hourly rate, $19.50 for workers of JJB and $19.97 for workers of Cuyama. (Dkt. 12 ("Indictment"), 8e.) Based on these representations, the government granted H-2A visas to workers for the defendant's companies. These material representations were false because defendants and their co-conspirators were in fact charging the H-2A workers thousands of dollars for the H-2A visas and paid the workers at a reduced rate of pay.

For example, in or around May 2025, defendant charged P.M., an individual worker, $8,500 in exchange for an H-2A visa to work at JJB Farms, LLC. (PSR, ¶ 12-14.) In or around May 2025, defendant charged

A.R., an individual worker, $7,500 in exchange for an H2A visa to work at JJB Farms, LLC. (PSR, ¶ 12-14.) In or around July 2025, Vasquez charged P.M., an individual worker, $5,000 in exchange for an H-2A visa to work at JJB Farms, LLC. (PSR, ¶ 18-21.) In addition, defendants paid the H-2A workers at JJB $16.50 an hour – approximately $3.25 per hour less than what was represented to the government. For Cuyama, defendants paid H-2A workers approximately $16.00 – approximately $3.50 per hour less than what was represented to the government.

**III. USPO'S GUIDELINES CALCULATION**

In the PSR, the USPO calculated defendant's total offense level to be 12 and calculated defendant's criminal history category to be II. (Id. ¶¶ 44, 54.)

The USPO's offense level calculation is as follows:

| | | |
|---|---|---|
| Base Offense Level: | 6 | U.S.S.G. §2D1.1(c) |
| Aggravating Role: | +8 | U.S.S.G. §3B1.1(c) |
| More than 10 victims | +2 | U.S.S.G. § 2D1.1(b)(4) |
| Acceptance of Responsibility | -2 | U.S.S.G. § 3E1.1 |

(Id. ¶¶ 30-44.)

The government concurs with the USPO's Guidelines calculation, except that it also further recommends an additional two-level variance as contemplated in the Plea Agreement.

**IV. THE GOVERNMENT'S RECOMMENDS AN ADDITIONAL TWO-LEVEL VARIANCE**

Pursuant to the Plea Agreement, the government recommends a two-level variance for defendant. (Plea Agreement, 3(e).) This variance was negotiated as part of the Plea Agreement, and defendant should receive the benefit of his bargain.

In addition, as stated in the defense papers, the variance is also supported by the § 3553 factors, particularly in light of defendant's immediate of acceptance of responsibility at the earliest meaningful opportunity, which not only saved the government significant resources, but also is the "the first and most important step toward respect for the law." (Dkt. 32-5.) Finally, defendant's old age and health also support a two-level variance.

Accordingly, an additional two-level variance should apply and defendant total offense level should be calculated as 10.

## V. GOVERNMENT'S SENTENCING RECCOMENDATION

At offense level 10 and criminal history category II, defendant Guidelines range is 8-14 months. The government respectfully recommends that the Court impose the mid point of the adjusted Guidelines and sentence defendant to 11 months' imprisonment, three years of supervised release, no fine, and a $100 special assessment. This sentence is sufficient but not greater than necessary in light of all the factors the Court must consider under 18 U.S.C. § 3553(a).

In determining the appropriate sentence for a defendant, a sentencing court must "make an individualized assessment based on the facts presented," which includes "a broad command to consider the nature and circumstances of the offense and the history and characteristics of the defendant." Gall v. United States, 552 U.S. 38, 50 & n.6 (2007) (quotation marks omitted); 18 U.S.C. § 3553(a). Here, based on the factors set forth in 18 U.S.C. § 3553(a), there are both aggravating and mitigating circumstances which warrant 11-month mid-point sentence.

First, the nature and circumstances of the crime are serious: defendant defrauded the federal government into issuing H-2A visa for

immigrant farm workers by misrepresenting that he would not charge fees for those visas and pay those workers certain hourly rate. Despite these representations, defendant did charge fees to and paid the workers a reduced rate, ultimately taking advantage of these vulnerable workers. That being said, the companies who employed the farm workers were not owned by the defendant, and instead he played just one part of a broader conspiracy to unlawfully charge fees to these farm workers. Taken together, this factor weighs in favor of a mid-point Guidelines sentence of 11 months.

Similarly, defendant history and characteristics also support a mid-point Guidelines sentence of 11 months. On the one hand, defendant was previously convicted for a similar scheme before and committed the instant offense on supervised release. But as defense points out, this conviction is already accounted for in defendant's criminal history category. Outside of this conviction, defendant's criminal history category is limited. In addition, defendant is a 66-year-old male with several health conditions that "may be exacerbated by incarceration" (PSR. at ¶¶ 78-79.) Taken together, this factor also justifies a sentence of 11-months.

Finally, a mid-point sentence of 11-months provides general and specific deterrence and promotes respect for the law. In addition, defendant has agreed to pay full restitution to the farm workers charged for fees and paid a reduced rate for their labor. Taken together, the sentencing factors weigh in favor of a mid-point adjusted Guidelines sentence of 11-months.

**VI. RESTITUTION**

The Mandatory Victim Restitution Act ("MVRA") applies to this offense; thus, restitution is mandatory in this case. In the Plea

Agreement, defendant has agreed to pay restitution in the amount at least $50,000.00, although the government expects the final restitution amount to exceed that figure.

Ultimately, as of the date of this filing, the government does not have sufficient information to determine the appropriate restitution amount. The MVRA provides that "the court shall set a date for the final determination of the victim's losses, not to exceed 90 days after sentencing." 18 U.S.C. § 3664(d)(5). In the event that the government remains unable to determine the appropriate amount by the sentencing hearing, the government respectfully requests that the Court set a restitution hearing within 90 days of defendant's sentencing to determine the applicable restitution amounts due to victims.

**VII. CONCLUSION**

For those reasons, the government respectfully recommends that the Court impose a sentence of 11-months incarceration, followed by a three-year period of supervised release, and a special assessment of $100. In addition, the government requests the Court order a future hearing on the applicable restitution amount.